UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MONICA LILIANA CAMERONI DE ADAMS, by and through its Administrator Eliot Cobb Adams; ELIOT COBB ADAMS, an individual; and NATALIE DANIELLE CAMERONI-ADAMS, an individual, | Case No.:  25-cv-1447-WQH-MSB **ORDER** |
| Plaintiffs, | |
| v. | |
| CITY OF SAN DIEGO, a public entity; CITY OF SAN DIEGO POLICE DEPARTMENT, a public entity; OFFICER MATTHEW BRACE, an individual; OFFICER MALLORY MARASCHIELLO, an individual; CHIEF DAVID NISLEIT, an individual; KHATI BROTHERS INVESTMENTS, INC., dba ROADWAY TOWING & RECOVERY, a California corporation; TOW & TRANSPORT, INC., dba ROADWAY TOWING & RECOVERY, a California corporation; JORDAN MAXIMILIAN LOPEZ, an individual; and DOES 1–25, inclusive, | |
| Defendants. | |

1

25-cv-1447-WQH-MSB

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiffs' Complaint filed by Defendant City of San Diego, Defendant Officer Matthew Brace, Defendant Officer Mallory Maraschiello, and Defendant Chief David Nisleit. (ECF No. 2.)

## I.   PROCEDURAL HISTORY

On April 2, 2025, Plaintiff Estate of Monica Liliana Cameroni de Adams, by and through its Administrator Eliot Cobb Adams; Plaintiff Eliot Cobb Adams; and Plaintiff Natalie Danielle Cameroni-Adams (collectively, "Plaintiffs") filed a Complaint in the Superior Court of the State of California, County of San Diego, Case No.: 25CU017593C. (Compl., ECF No. 1-2.) On May 5, 2025, Plaintiffs filed a Petition for an Order Relieving Plaintiffs from Government Entity Claim Filing Requirements (the "Petition") in the same court. (ECF No. 1-4.)

On June 5, 2025, Defendant City of San Diego, Defendant Officer Matthew Brace, Defendant Officer Mallory Maraschiello, and Defendant Chief David Nisleit (collectively, "San Diego Defendants") removed the action to this Court. (ECF No. 1.)

On June 12, 2025, San Diego Defendants filed the pending Motion to Dismiss Plaintiffs' Complaint (the "Motion to Dismiss"). (ECF No. 2.) In support, San Diego Defendants also filed a Request for Judicial Notice (ECF No. 2-6) and submitted a "true and correct copy of the Body Worn Camera (BWC) video captured by Defendant Officer Brace when he arrived and investigated the accident scene on November 5, 2023." (ECF No. 2 at 10–12.)

On July 7, 2025, Plaintiffs filed an Opposition. (ECF No. 3.) Plaintiffs also filed an Objection to San Diego Defendants' Request for Judicial Notice. (ECF No. 3-1.) On July 14, 2025, San Diego Defendants filed a Response. (ECF No. 4.)

## II.   ALLEGATIONS IN THE COMPLAINT

On November 5, 2023, Monica Liliana Cameroni de Adams ("Ms. Cameroni de Adams") was parked in her 2001 Honda Odyssey minivan at or around 4200 Clairemont Mesa Boulevard in San Diego, California. (Compl. ¶ 34.)

At approximately 1:08 a.m., Defendant Jordan Maximilian Lopez ("Lopez") rear-ended Ms. Cameroni de Adams's vehicle and collided with another parked vehicle. *Id.* ¶ 35. At the time of the incident, Defendant Lopez was driving under the influence of drugs and/or alcohol. *Id.* ¶ 36.

Shortly after the collision, Defendant Officer Matthew Brace ("Officer Brace"), Defendant Officer Mallory Maraschiello ("Officer Maraschiello") (together, "the Defendant Officers") and Defendants Khati Brothers Investments and Tow & Transport, Inc. (together, "Towing Defendants") arrived at the location of the automobile crash. *Id.* ¶¶ 12, 15, 36.

Ms. Cameroni de Adams's vehicle sustained "moderate property damage," including to the rear door, hood, and front bumper, in the accident. *Id.* ¶ 37. Ms. Cameroni de Adams "remained inside her vehicle and was visible to anyone looking inside [her] vehicle." *Id.* Ms. Cameroni de Adams had "sustained survivable blunt force injuries from the collision." *Id.*

Defendant Officer Brace, Defendant Officer Maraschiello, and Towing Defendants did not "look[] inside of Ms. Cameroni de Adams' vehicle for victims." *Id.* ¶ 40. Instead, the Defendant Officers and Towing Defendants arranged for Ms. Cameroni de Adams's vehicle to be taken to a tow yard owned by Towing Defendants, which is located at 5975 Fairmont Avenue. *Id.* ¶¶ 38, 40.

Ms. Cameroni de Adams "relied on [the Defendants'] affirmative actions" and believed that "she was [being] transported to receive medical care and/or treatment." *Id.* ¶ 38. Ms. Cameroni de Adams was transported to the tow yard without receiving medical attention. *Id.* ¶ 41.

Approximately ten days later, on November 14, 2023, Plaintiff Eliot Cobb Adams ("Eliot") and Plaintiff Natalie Danielle Cameroni-Adams ("Natalie")—the children of Ms. Cameroni de Adams—filed a missing person report. *Id.* ¶ 44.

On December 6, 2023, a yard worker contacted law enforcement to report a "pungent smell" coming from Ms. Cameroni de Adams's vehicle. *Id.* ¶ 45. "Law enforcement and

25-cv-1447-WQH-MSB

fire personnel" found Ms. Cameroni de Adams in the middle row of her vehicle. *Id.* Ms. Cameroni de Adams was declared dead on the scene. *Id.* The law enforcement and fire personnel described Ms. Cameroni de Adams's body:

> Signs of decomposition included a foul odor, skin discoloration, fluid loss, and parts of her skeleton being visible. The decedent was wearing a bodily fluid soiled t-shirt, bra, and underwear. Her face was unrecognizable due to the condition of her body. Her eyes were not viewable, but her hair appeared gray. No obvious ligature mark furrow was noted. No trauma was noted to her torso or extremities. No illicit drug use marks were noted in her arms. No tattoos were noted.

*Id.* ¶ 46. Plaintiff Eliot and Plaintiff Natalie were unable to bury or cremate Ms. Cameroni de Adams's body because of the advanced state of her decomposition. *Id.*

Between December 6, 2023, and October 15, 2024, Plaintiffs "attempted to obtain information related to the time, place, and manner of Ms. Cameroni de Adams' death." *Id.* ¶ 22. During this period, representatives from the San Diego County District Attorney's office represented to Plaintiffs that Defendant Lopez was the person "who solely and exclusively caused the death of their mother." *Id.*

On August 9, 2024, the San Diego Medical Examiner completed a report (the "Medical Examiner's Report") related to Ms. Cameroni de Adams's death. *Id.* ¶ 25. On October 16, 2024, Plaintiffs received a copy of the Medical Examiner's Report. *Id.* The Medical Examiner's Report indicated that Ms. Cameroni de Adams "survived the collision" and did not die until after being transported in her vehicle to the tow yard. *Id.* ¶ 26. This was the "first time that Plaintiffs learned" that San Diego Defendants were "involved in causing the death of Ms. Cameroni de Adams." *Id.* ¶ 27.

On November 5, 2024, Plaintiffs filed claims against the City of San Diego and an Application for Permission to Present Late Claims pursuant to California Government Code § 911.4. *Id.* ¶ 28.

On November 22, 2024, the City of San Diego denied the Application for Permission to Present Late Claims. *Id.* ¶ 30.

25-cv-1447-WQH-MSB

Plaintiffs allege that Defendants left Ms. Cameroni de Adams "trapped inside of her vehicle" and "deprived [her] of life-saving medical care and treatment." *Id.* ¶ 47. Plaintiffs allege that Defendants failed to maintain reasonable policies "related to conducting reasonable inspections, examinations and/or otherwise investigations of vehicles to ascertain and confirm the presence of persons in the vehicles prior to vehicles being towed" and to adequately supervise its representatives and employees related to the same. *Id.* ¶ 48.

Plaintiffs bring six causes of action in their Complaint. First, Plaintiffs bring a claim of motor vehicle negligence against Defendant Lopez. *Id.* ¶ 52–60. Second, Plaintiffs bring a claim for due process violations under 42 U.S.C. § 1983 against the Defendant Officers and Towing Defendants. *Id.* ¶ 61–72. Third, Plaintiffs bring a claim for municipal liability for a failure to train under 42 U.S.C. § 1983 against Defendants City of San Diego and San Diego Police Department.[1] *Id.* ¶ 73–83. Fourth, Plaintiffs bring a claim of negligence against all Defendants. *Id.* ¶ 84–99. Fifth, Plaintiffs bring a claim of tortious interference with human remains against Towing Defendants. *Id.* ¶ 100–103. Sixth, Plaintiffs bring a claim for negligent hiring, supervision, and retention against all Defendants.[2] *Id.* ¶ 104–112.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is proper only where there is no cognizable legal theory[,] or an

---

[1] Plaintiffs list Defendant Chief David Nisleit as a party against whom this cause of action is brought, (ECF No. 1-2 at 24), but clarify that they do not assert this cause of action against him in their Opposition to the Motion to Dismiss. (ECF No. 3 at 9.) To the extent that the Complaint purports to assert this claim against Defendant Chief David Nisleit, the claim is dismissed.

[2] Plaintiffs subsequently dismissed without prejudice this cause of action as to Defendant Lopez. (ECF Nos. 5, 6.)

25-cv-1447-WQH-MSB

absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). District courts "liberally construe pleadings in civil rights cases." *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). While a pleading "does not require 'detailed factual allegations,'" Federal Rule of Civil Procedure 8 nevertheless "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## IV. DISCUSSION

San Diego Defendants move to dismiss "all claims in the Complaint against City, [San Diego Police Department], Officers Brace and Maraschiello, and Chief David Nisleit" for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e). (ECF 2-1 at 8–9.)

25-cv-1447-WQH-MSB

The causes of action stated against San Diego Defendants in the Complaint are: (1) the claim for due process violations under 42 U.S.C. § 1983 asserted against the Defendant Officers ("Count II"); (2) the claim for municipal liability for a failure to train under 42 U.S.C. § 1983 against Defendant City of San Diego and Defendant San Diego Police Department ("Count III"); (3) the negligence claim against all San Diego Defendants ("Count IV"); and (4) the claim for negligent hiring, retention and supervision against all San Diego Defendants ("Count VI").

### A. Request for Judicial Notice

As a preliminary matter, the Court reviews San Diego Defendants' request for judicial notice under Federal Rule of Evidence 201 regarding three documents filed in support of their Motion to Dismiss: Exhibit A, the San Diego Municipal Code § 22.1801(b); Exhibit B, San Diego Charter, Sections 57 and 58; and Exhibit C, a copy of Officer Matthew Brace's body worn camera video footage from the date of the car accident on November 5, 2023 (the "Body Worn Camera footage"). (ECF No. 2-6 at 1–2.)

In response, Plaintiffs file an Objection to San Diego Defendants' Request for Judicial Notice asking the Court to decline to take judicial notice of the Body Worn Camera footage. (ECF No. 3-1 at 6.) Plaintiffs contend that district courts should not consider material beyond the pleadings at the motion to dismiss stage. *Id.* at 4. Plaintiffs contend that the "contents, nature and inferences of [the Body Worn Camera footage] are disputed" and that their Complaint does not rely on the Body Warn Camera footage as the basis for its allegations and claims against San Diego Defendants. *Id.* at 5–6. Plaintiffs also contend that, at the time of filing their Objection, they "ha[d] not received" the Body Worn Camera footage and could not verify its accuracy. *Id.* at 5.

As a general matter, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Considering material outside the pleadings converts the 12(b)(6) motion "into a motion for summary judgment under Rule 56" and "both parties must have the opportunity to present

all the material that is pertinent to the motion." *Id.* (quotations omitted). There are two exceptions to this rule: "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.* Incorporation-by-reference allows a district court to "treat[] certain documents as though they are part of the complaint itself." *Id.* at 1002. Judicial notice permits a district court to "notice a fact that is not subject to reasonable dispute," if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

In the context of encounters with law enforcement, district courts have reached different conclusions when considering whether to review body worn camera footage at the motion to dismiss stage. In *Lihosit v. Flam*, the District Court for the District of Arizona chose to review body worn camera footage when adjudicating a motion to dismiss excessive force claims brought under § 1983 because the "complaint necessarily relie[d] on the circumstances surrounding [the plaintiff's] arrest." No. CV-15-01224-PHX-NVW, 2016 WL 2865870, at *1–*4 (D. Ariz. May 17, 2016). In *Lee v. City of San Diego*, the Southern District of California declined to review body worn camera footage while adjudicating a motion to dismiss excessive force claims brought under § 1983 claims because, although the plaintiff's claims were "based on the events surrounding his arrest," the complaint did not "refer to the videos" and the plaintiff's claims were "not based on the videos." *Lee v. City of San Diego*, No. 18CV0159 W (BLM), 2019 WL 117775, at *5 (S.D. Cal. Jan. 7, 2019).

Here, the Court does not need to conclude whether incorporation-by-reference or judicial notice would permit it to consider the Body Worn Camera footage in its review of the pending Motion to Dismiss. Plaintiffs' Complaint does not refer to nor rely on the Body Worn Camera footage. San Diego Defendants' contentions are likewise not premised on any material in the Body Worn Camera footage. San Diego Defendants contend only that the "exhibit is essential in helping the Court fully understand the events underlying the allegations and claims made in the Complaint." (ECF No. 2-6 at 4.) The Court does not find reason to review the Body Worn Camera footage for the purpose of adjudicating the

25-cv-1447-WQH-MSB

pending motion. Plaintiffs' Objection to San Diego Defendants' Request for Judicial Notice (ECF No. 3-1) is denied as moot.

Plaintiffs do not object to the Request for Judicial Notice (ECF No 2-6) with respect to Exhibit A, the San Diego Municipal Code § 22.1801(b), or Exhibit B, San Diego Charter, Sections 57 and 58. These public documents are not "not subject to reasonable dispute" within the meaning of Federal Rule of Evidence 201(b), and the Court takes judicial notice of these documents. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of city ordinances); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (stating that a court may take judicial notice of "matters of public record") (quotation omitted).

### B. Count II: Due Process Violation under 42 U.S.C. § 1983

Plaintiffs assert their second cause of action for due process violations under 42 U.S.C. § 1983 against the Defendant Officers "in their individual capacities under color of state law."[3] (Compl. ¶ 63.) Plaintiffs contend that the Defendant Officers "acted affirmatively so as to place" Ms. Cameroni de Adams in a "situation of actual, particularized danger" by transporting her and her vehicle to the tow yard while she remained injured inside the vehicle. *Id.* ¶ 64. Plaintiffs also contend that the Defendant Officers "knew and/or should have known" that Ms. Cameroni de Adams faced a substantial risk of serious harm" and were "deliberately indifferent to [] known and foreseeable risks" by transporting her to the tow yard without medical treatment. *Id.* ¶ 65.

### 1. Failure to State a Claim

San Diego Defendants contend that Plaintiffs fail to state a claim for a deprivation of constitutional rights against the Defendant Officers. (ECF No. 2-1 at 13–16.) San Diego Defendants contend that the Defendant Officers did not "create the peril in which [Ms. Cameroni de Adams] found herself" and "took no affirmative action which contributed to,

---

[3] Plaintiffs also assert this cause of action against Towing Defendants. (Compl. ¶ 63.) San Diego Defendants do not move to dismiss this cause of action as to those Defendants.

increased, or changed the injuries which would have otherwise existed as a result of the rear-end accident Defendant Lopez caused." *Id.* at 14. San Diego Defendants contend that the Defendant Officers had "no duty . . . to assist" Ms. Cameroni de Adams. *Id.* San Diego Defendants also contend that the Defendant Officers did not have a "legally recognized special relationship" that would create an affirmative duty to protect Ms. Cameroni de Adams from harm. *Id.* at 14–16.

Plaintiffs respond that the Defendant Officers "took affirmative actions" that placed Ms. Cameroni de Adams in "state-created danger." (ECF No. 3 at 6.) Plaintiffs contend that these "affirmative actions included, without limitation, (1) affirmatively transporting Ms. Cameroni de Adams to a remote location away from life-saving medical care and/or treatment; (2) affirmatively not conducting an inspection, inventory, examination, and/or reasonable search of Ms. Cameroni de Adams' vehicle; and (3) affirmatively not conducting any reasonable inventory of the contents of Ms. Cameroni de Adams' vehicle at any time." *Id.* at 7.

"As a general rule, members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."). There are two exceptions to this principle: "(1) the 'special relationship' exception; and (2) the 'danger creation' exception." *Grubbs*, 974 F.2d at 121.

The "special relationship" exception applies only upon "incarceration, institutionalization, or other similar restraint of personal liberty." *Patel v. Kent School Dist.*, 648 F.3d 965, 972 (9th Cir. 2011) (quoting *DeShaney*, 489 U.S. at 200.) "The special-relationship exception does not apply when a state fails to protect a person who is not in custody." *Id.* Here, Plaintiffs do allege that Ms. Cameroni de Adams entered the "custody and care" of the San Diego Defendants by virtue of their transportation of her vehicle. (Compl. ¶ 86.) However, in their Opposition to the Motion to Dismiss, Plaintiffs contend

25-cv-1447-WQH-MSB

that "the special relationship doctrine is inapplicable" here because their claim against the Defendant Officers does "not concern their failure to protect Ms. Cameroni de Adams from the harm caused by Defendant Driver Lopez's collison, but rather, [their] affirmative actions in transporting Ms. Cameroni de Adams" to the tow yard. (ECF No. 3. at 8 (emphasis omitted).) At this stage, the Court declines to consider whether the special relationship exception applies to Plaintiffs' claim under 42 U.S.C. § 1983 against the Defendant Officers because Plaintiffs disclaim that argument.

The "danger creation" or "state-created danger" exception requires a plaintiff to "establish that (1) a state actor's affirmative actions created or exposed him to an actual, particularized danger [that she] would not otherwise have faced, (2) that the injury [s]he suffered was foreseeable, and (3) that the state actor was deliberately indifferent to the known danger." *Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023) (quotation omitted); *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).

### i.   **Affirmative Action**

The first prong of the state-created danger test requires a district court to determine "whether an officer affirmatively place[d]" a person in danger by "examin[ing] whether the officers left the person in a situation that was more dangerous than the one in which they found [her.]" *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000). "Whether the danger already existed is not dispositive because, 'by its very nature, the doctrine only applies in situations in which the plaintiff was directly harmed *by a third party*—a danger that, in every case, could be said to have already existed.'" *Martinez*, 943 F.3d at 1271 (quoting *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012) (emphasis in original)).

The affirmative-action prong of the state-created danger test may be satisfied by officers' conduct that deprives a plaintiff of medical care or exposes them to environmental dangers. *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) ("Impeding access to medical care amounts to leaving a victim in a more dangerous situation."); *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (holding that "removing [the

25-cv-1447-WQH-MSB

plaintiff] from public view" after identifying medical distress and making it "impossible for anyone to provide emergency medical care" placed him in a more dangerous position). In *Munger*, for example, the Ninth Circuit held that a district court erred in granting summary judgment on § 1983 claims to defendant police officers who ejected an "obviously drunk" patron "wearing only jeans and a t-shirt" into a "bitter cold night." *Munger*, 227 F.3d at 1084. The patron was discovered the following day having died from hypothermia. *Id.* at 1085. The Ninth Circuit wrote that the officers "affirmatively place[d]" the plaintiff in "a position of danger." *Id.* at 1087. In *Wood v. Ostrander*, the Ninth Circuit similarly held that a district court erred in granting summary judgment on § 1983 claims to a defendant officer that arrested an intoxicated driver and then left the plaintiff passenger "stranded [] in a high-crime area at 2:30 a.m." 879 F.2d 583, 586, 590 (9th Cir. 1989). The plaintiff ultimately "accepted a ride with an unknown man" who "took [her] to a secluded area and raped her." *Id.* at 586. The Ninth Circuit held that the plaintiff had raised a triable issue of fact as to whether the defendant officer had affirmatively placed her in a position of danger. *Id.* at 589–90.

Here, drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that Plaintiffs plausibly allege that the Defendant Officers' actions placed Ms. Cameroni de Adams in a situation that was more dangerous than the one in which they found her. Plaintiffs allege that Ms. Cameroni de Adams was transported from the scene of the incident to the tow yard in a "remote location" after she had suffered "survivable blunt force injuries." (Compl. ¶ 37–38.) These allegations support an inference that Ms. Cameroni de Adams suffered a heightened danger of failing to receive timely medical care because the Defendant Officers transported her to a distant location with fewer passersby and less proximity to emergency services. The likelihood that another person might discover Ms. Cameroni de Adams and render aid was decreased by her isolation, as alleged in the Complaint. The danger that Ms. Cameroni de Adams would die from her "survivable" injuries was increased. At this stage of the proceedings, Plaintiffs satisfy the first prong of the state-created danger test.

### ii.   **Foreseeability**

The second prong of the state-created danger test requires a district court to consider whether the plaintiff's "ultimate injury was foreseeable." *Martinez*, 943 F.3d at 1273 (quoting *Hernandez v. City of San Jose*, 897 F.3d 1125, 1130 (9th Cir. 2018)). "This does not mean that the exact injury must be foreseeable. Rather, 'the state actor is liable for creating the foreseeable danger of injury given the particular circumstances.'" *Id.* at 1273–74 (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 n.5 (9th Cir. 2006)).

The foreseeability prong is satisfied when defendant officers have knowledge of a particular danger to which the plaintiff will be exposed or when common sense suggests that the officers' actions will expose the plaintiff to danger. *Grubbs*, 974 F.2d at 121 (describing that "[d]efendants knowingly assigned" a female nurse at a custodial institution to work alone with a male offender with "an extraordinary history of unrepentant violence against women and girls" created foreseeable danger); *Martinez*, 943 F.3d at 1268, 1274 (holding that "as a matter of common sense," subsequent assaults against the plaintiff following her reports of domestic violence to police while in the presence of the repeat abuser "were objectively foreseeable"); *Woods*, 879 F.2d at 590 (holding that "the inherent danger facing a woman left alone at night in an unsafe area is a matter of common sense").

Here, Plaintiffs allege sufficient facts to establish that the Defendant Officers' actions could foreseeably have exposed Ms. Cameroni de Adams to harm. Plaintiffs allege that the Defendant Officers failed to "reasonably investigat[e] the scene" by "looking inside of Ms. Cameroni de Adams' vehicle for victims" and, instead, called for the vehicle to be transported to the tow yard without adequate inspection. (Compl. ¶ 40.) It is plausible that an officer's failure to survey the scene of an automobile crash could lead to unidentified victims. The Defendant Officers' alleged failure to adequately investigate the scene could be expected to deprive an injured persons on the scene of necessary medical attention. The danger that an injured person would suffer from a heightened risk of serious harm without medical attention would be foreseeable at the time that an officer fails to

25-cv-1447-WQH-MSB

inspect the scene. At this stage of the proceedings, Plaintiffs satisfy the second prong of the state-created danger test.

### iii.   **Deliberate Indifference**

The deliberate indifference prong of the state-created danger test requires a plaintiff to sufficiently plead that the defendant "disregarded a known or obvious consequence of [their] action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) (describing "deliberate indifference" as a "stringent standard of fault"); *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) ("*Grubbs II*") (requiring "[d]eliberate indifference to a known, or so obvious as to imply knowledge of, danger"). "Under *Grubbs*, the standard we apply is even higher than gross negligence—deliberate indifference requires a culpable mental state." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 975 (9th Cir. 2011). The defendant officer must "know[] that something *is* going to happen but ignore[] the risk." *Id.* (quoting *Grubbs II*, 92 F.3d at 900).

In *Estate of Soakai v. Abdelaziz*, the Ninth Circuit recently considered whether the standard for deliberate indifference had been satisfied in a case involving a high-speed chase initiated by the defendant police officers that ended in a crash causing serious injuries and death to bystanders. 137 F.4th 969, 983–84 (9th Cir. 2025). "Despite witnessing the crash," the defendant officers "neither stopped to render aid nor summoned emergency services" and, when other officers began arriving at the crash site, the defendant officers returned and "pretended not to have been at the scene previously." *Id.* at 975. The Ninth Circuit reasoned that the defendant officers allegedly witnessed the collision, "saw that [the plaintiffs] needed immediate medical attention," and "knew from their training—and common sense—that the danger to Plaintiffs would increase the longer they went without help." *Id.* at 984. The Ninth Circuit held that the plaintiffs had stated a claim for state-created danger. *Id.* at 985.

In *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997), the Ninth Circuit affirmed the district court's denial of a motion to dismiss § 1983 claims against officers that responded to a 911 call for emergency services. *Id.* at 708. The officers encountered a

25-cv-1447-WQH-MSB

"seriously ill" man on his porch and "found him to be in grave need of medical care," but "cancelled the request for paramedics" and moved him inside without further attention. *Id.* The man died of respiratory failure and was found the following morning by family members. *Id.* The Ninth Circuit distinguished the case from others in which defendant officers and firefighters had been held to not be liable because, in *Penilla*, the defendants "increased the risk facing" the victim "*after* they had examined him and found him to be in serious medical need." *Id.* at 710 (emphasis in original); *see also Munger*, 227 F.3d at 1087 (describing that the defendant officers "knew" that the bar patron was intoxicated and that their subsequent search for him "demonstrates that they were aware of the danger that he was in").

In *Patel v. Kent Sch. Dist.*, 648 F.3d 965 (9th Cir. 2011), the Ninth Circuit affirmed a district court's grant of summary judgment on a § 1983 claim in favor of a defendant special-education teacher that failed to properly supervise a student because there was "no evidence even hinting that [the defendant teacher] intended to expose [the student] to a risk or otherwise knew that something was going to happen but ignored the risk") (cleaned up). *Id.* at 969, 976. The court wrote that, "[a]t worst," the defendant teacher had "committed a lapse in judgment" but that the evidence did not suggest she "harbored the requisite mental state of intentionally or knowingly subjecting [the student] to a known or obvious danger." *Id.* at 976.

Drawing all reasonable inferences in favor of Plaintiffs, the Complaint does not contain sufficient allegations to establish that the Defendant Officers acted with deliberate indifference. Plaintiffs' allegations do not support the conclusion that Defendant Officers knew that transporting Ms. Cameroni de Adams's vehicle would subject her to heightened danger nor that such a risk was "obvious." *Grubbs II*, 92 F.3d at 900. There is no allegation that the Defendant Officers were subjectively aware that Ms. Cameroni de Adams remained in her vehicle at the time that they ordered its transport to the tow yard. Unlike in *Penilla*, there is no allegation that the Defendant Officers had been called to render aid to a particular victim and, unlike in *Estate of Soakai*, there is no allegation that the

25-cv-1447-WQH-MSB

Defendant Officers witnessed the automobile crash and should have understood that those involved were in dire need of assistance. Plaintiffs do not allege that any information at the scene provided the Defendant Officers with actual—or even constructive—knowledge of Ms. Cameroni de Adams's presence. There are likewise not sufficient allegations to suggest that Ms. Cameroni de Adams's presence in a parked car at 1:08 a.m. should have been obvious to the Defendant Officers. Plaintiffs do not allege that the Defendant Officers ignored clear indications that Ms. Cameroni de Adams was at the scene of the automobile crash. Plaintiffs instead allege that the Defendant Officers did not "reasonably investigat[e] the scene." (Compl. ¶ 40.) This allegation does not support an inference that the Defendant Officers' conduct meets the high standard for deliberate indifference. *Patel*, 648 F.3d at 975 ("Under *Grubbs*, the standard we apply is even higher than gross negligence—deliberate indifference requires a culpable mental state."). Plaintiffs fail to satisfy the third prong of the state-created danger test.

Accordingly, Plaintiffs fail to adequately allege a claim for relief under 42 U.S.C. § 1983 based on a state-created danger theory.

### *2. Qualified Immunity*

San Diego Defendants also contend that qualified immunity protects Defendant Officer Brace and Defendant Officer Maraschiello from liability. (ECF No. 2-1 at 23–24.) San Diego Defendants contend, as above, that no violation of constitutional rights occurred and, if the Court holds otherwise, that the constitutional right at issue was not clearly established. *Id.* Plaintiffs respond that the Defendant Officers violated Ms. Cameroni de Adams's constitutional rights and that the right to be free from state-created dangers is clearly established by Ninth Circuit and United States Supreme Court precedent. (ECF No. 3 at 19–21.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S.

25-cv-1447-WQH-MSB

223, 231 (2009)). In determining whether qualified immunity applies, a district court inquires whether, "[t]aken in the light most favorable to the party asserting the injury," the "facts alleged show the officer's conduct violated a constitutional right" and, if so, "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The Court has concluded that Plaintiffs fail to sufficiently plead a constitutional violation against Defendant Officer Brace and Defendant Officer Maraschiello based on a theory of state-created danger. San Diego Defendants raise the issue of qualified immunity as an alternative theory to their earlier contentions. (ECF No. 2-1 at 22). The Court accordingly declines to reach the qualified immunity analysis because the facts alleged do not show that the Defendant Officers violated a constitutional right.

Accordingly, the Motion to Dismiss is granted with respect to Plaintiffs' second cause of action for due process violations under 42 U.S.C. § 1983 against the Defendant Officers.

### C.    Count III: Failure to Train under 42 U.S.C. § 1983

Plaintiffs assert their third cause of action against Defendants City of San Diego and San Diego Police Department for a violation of Ms. Cameroni de Adams's rights under the Fourteenth Amendment to the U.S. Constitution for a failure to train under 42 U.S.C. § 1983. (Compl. ¶¶ 9, 77.) Plaintiffs contend that Defendants City of San Diego and San Diego Police Department maintained inadequate training policies and failed to train their employees to appropriately address recurring situations, like the automobile incident at issue here. *Id.* ¶¶ 77–78.

Municipalities are considered "persons" under 42 U.S.C. § 1983 and may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality, however, "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [§ 1983] on a respondeat superior theory." *Id.* at 691. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

> In order to establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."

*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (alteration in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). "Failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989)).

### 1. San Diego Police Department

San Diego Defendants contend that Plaintiffs may not assert a § 1983 claim against Defendant San Diego Police Department because it is not a "person" within the meaning of the federal statute. (ECF No. 2-1 at 12.) San Diego Defendants contend that the San Diego Police Department is a "municipal department within the City of San Diego" and that Plaintiffs may only assert their claim against the "parent entity." *Id.* Plaintiffs do not respond to this argument.

"While local governmental units, such as counties or municipalities, are considered 'persons' within the meaning of Section 1983, municipal departments and sub-units, including police departments, are not." *Paschelke v. Doe*, No. CIV 09-2191 IEG(CAB), 2010 WL 2640501, at *1 (S.D. Cal. June 30, 2010) (quotations omitted); *Vance v. County of Santa Clara*, 928 F. Supp. 993, 995–96 (N.D. Cal. 1996) ("[T]he term 'persons' does not encompass municipal departments."). The record indicates that Defendant San Diego Police Department is a City Department within the City of San Diego. (*See* Exhibit A, ECF No. 2-3 at 3 (identifying "Police" as one of the "departments of the City of San Diego" in

25-cv-1447-WQH-MSB

San Diego Municipal Code § 22.1801(b)).) The Court concludes that Defendant San Diego Police Department is not a proper defendant for a *Monell* claim brought under 42 U.S.C. § 1983. Accordingly, Plaintiffs' third cause of action is dismissed as to Defendant San Diego Police Department.

### 2. Failure to State a Claim

San Diego Defendants contend that Plaintiffs' *Monell* claim should be dismissed because Plaintiffs do not adequately plead their claim pursuant to Rule 12(b)(6). (ECF No. 2-1 at 16.) San Diego Defendants contend that Plaintiffs fail to identify an "underlying constitutional violation" because the Defendant Officers did not violate Ms. Cameroni de Adams's constitutional rights after the vehicle collision. *Id.* at 17. San Diego Defendants contend that Plaintiffs fail to "identify any specific training program, the deficiencies of such program, a pattern of similar violations, or a constitutional violation attributable to a lack of training." *Id.* at 19. San Diego Defendants contend that Defendant City of San Diego cannot be held liable for the acts of its Officers. *Id.*

Plaintiffs respond that they sufficiently allege that Defendant City of San Diego was "deliberately indifferent" in its "failure to train its employees" about policies related to ascertaining the presence of any persons in a vehicle prior to towing that vehicle, rendering medical care to occupants in a vehicle after a collision, and conducting inspections or examinations for vehicles brought to a tow yard. (ECF No. 3 at 10–11.) Plaintiffs contend that Defendant City of San Diego "had constructive notice" of constitutional violations when "it disregarded the obvious consequences of placing [Ms.] Cameroni de Adams away from necessary medical treatment by entombing her inside her vehicle." *Id.* at 11.

Plaintiffs also state that, "[t]o the extent that this Court finds additional facts are required for Plaintiffs to assert [this claim], Plaintiffs request leave to amend to allege more specific facts" related to their failure to train theory. *Id.* at 11. "Plaintiffs intend to plead additional facts related to how Defendant [City of San Diego] failed to . . . comply with Basic Course Workbook Series, Learning Domain 29, Traffic Collision Investigation,

specifically the Collision Scene Management primary objective to determine if there are injured parties and render medical assistance if necessary." *Id.*

To state a claim for relief under a theory of *Monell* liability, a plaintiff must "show an underlying constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights."); *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

The Court has concluded that Plaintiffs fail to adequately state their claim for a violation of constitutional rights related to the conduct of the Defendant Officers in transporting Ms. Cameroni de Adams to the tow yard after the vehicle collision. Based on the Court's preceding analysis, Plaintiffs have not alleged "sufficient facts to support a reasonable inference of [] a constitutional violation." *Benavidez*, 993 F.3d at 1153. Plaintiffs do not satisfy the first element of the *Monell* test at this stage of the proceedings.

Accordingly, the Motion to Dismiss is granted with respect to Plaintiffs' third cause of action for failure to train under 42 U.S.C. § 1983 because Plaintiffs fail to state a claim under which relief can be granted.

### D.     Timeliness Under the California Government Claims Act

Plaintiffs assert two causes of action under California law against San Diego Defendants: their fourth cause of action for negligence and their sixth cause of action for negligent hiring, supervision, and retention. (Compl. ¶¶ 84–99, 104–112). Plaintiffs bring both causes of action against, among others, Defendant City of San Diego.

Prior to reviewing the parties' other contentions regarding each claim, the Court must determine whether the tort claims asserted against Defendant City of San Diego should be dismissed for failure to comply with the California Government Claims Act. *See* Cal. Gov't Code. §§ 810 *et seq*.

San Diego Defendants contend that, pursuant to California Government Code § 911.2, Plaintiffs were required to file a claim with the City of San Diego no later than six months after the accrual of their cause of action, which San Diego Defendants contend occurred upon the discovery of Ms. Cameroni de Adams's body on December 6, 2023. (ECF No. 2-1 at 26.) San Diego Defendants contend that Plaintiffs failed to file a claim within the statutory timeline required by the California Government Claims Act and subsequently filed an application for permission to file a late claim, which the City of San Diego denied. *Id.* San Diego Defendants contend that the California Government Code now precludes Plaintiffs from asserting tort claims against Defendant City of San Diego because their application to file a late claim has been denied.

Plaintiffs respond that their tort claims against Defendant City of San Diego should be allowed to proceed because Plaintiffs complied with all statutory requirements under California law. (ECF No. 3 at 21–23.) Plaintiffs allege that they "attempted to obtain information related to the time, place, and manner of Ms. Cameroni de Adams' death" in the months following the discovery of her body on December 6, 2023. *Id.* at 22 (citing Compl. ¶ 22). Plaintiffs contend that, during the period from December 6, 2023, through October 15, 2024, the San Diego District Attorney's office "represented to Plaintiffs that it was Defendant Driver [Lopez] who solely and exclusively caused the death of Ms. Cameroni de Adams." *Id.* (citing Compl. ¶ 22).

Plaintiffs contend that it was not until their receipt of the Medical Examiner's Report on October 16, 2024, that they "were able to obtain essential facts about the circumstances related to Ms. Cameroni de Adams' death necessary for them to file claims against" Defendant City of San Diego and other government entities. *Id.* ¶¶ 8, 22–25. Plaintiffs contend that the Medical Examiner's Report provided essential information that Ms. Cameroni de Adams "had survived the collision" and "did not die" until after being transported to the tow yard. *Id.*

Plaintiffs allege that they filed a claim against Defendant City of San Diego and an Application for Permission to Present Late Claims on November 5, 2024 pursuant to the

25-cv-1447-WQH-MSB

requirements of California Government Code § 911.4. (Compl. ¶ 28.) Plaintiffs allege that Defendant City of San Diego rejected their claim and application on November 22, 2024. *Id.* at ¶ 30.

Plaintiffs then filed their Petition (ECF No. 1-4) in the Superior Court of California seeking relief pursuant to California Government Code § 946, which allows a court to excuse a petitioner from the claims-presentation requirements of the California Government Claims Act. Plaintiffs allege that the Petition was set for a hearing on December 5, 2025, but that this action was removed to this Court prior to that hearing in state court. (ECF No. 3 at 22 n.1.) Plaintiffs now request that the Court rule on the Petition as part of its Order on the Motion to Dismiss. *Id.*

### 1. Subject Matter Jurisdiction

Pursuant to the California Government Claims Act, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented" until "a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board." Cal. Gov't Code § 945.4; *see also id.* § 911.2 (requiring that a "claim relating to a cause of action for death or for injury to person" to be presented to the Department of General Services). If a timely claim is rejected, then the claimant may file suit against the public entity. Cal. Govt' Code § 945.4. If an untimely claim is presented and rejected, however, then a petition for relief from that rejection may be made to a "superior court that would be a proper court for the trial of an action on the cause of action to which the claim relates." *Id.* § 946.6.

"The question presented by a Section 946.6 petition is whether the claimant should be relieved of [their] obligations under the [California Government Claims Act] and, because it is a question separate from the merits, it is not properly within a federal court's subject matter jurisdiction." *Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011, 1022 (C.D. Cal. 2000); *see Luers v. Smith*, 941 F. Supp 105, 108 (C.D. Cal. 1996) ("This court

25-cv-1447-WQH-MSB

does not have federal subject matter or supplemental state claim jurisdiction over such a petition.").

Federal district courts in California considering this issue have concluded that they may not exercise subject matter jurisdiction over a petition filed under California Government Code § 946.6. "Although the Ninth Circuit has not interpreted § 946.6, most California District Courts interpret § 946.6(a) as meaning that only state superior courts, and not federal district courts, may grant relief from [California] Government Code § 945.4." *Hill v. City of Clovis,* No. 1:11-CV-1391 AWI SMS, 2012 WL 787609, at *12 (E.D. Cal. Mar. 9, 2012)*, on reconsideration in part sub nom. Hill v. Clovis Police Dep't*, No. 1:11-CV-1391 AWI SMS, 2012 WL 1833880 (E.D. Cal. May 18, 2012) (collecting cases); *San Diego Branch of Nat'l Ass'n for the Advancement of Colored People v. Cnty. of San Diego*, No. 16-CV-2575-JLS (BGS), 2017 WL 5194579, at *2 (S.D. Cal. Nov. 9, 2017) ("The majority of courts hold the district court does not have jurisdiction to rule on a § 946.6 petition, with two outlier cases holding the opposite."); *Garza v. Alvara*, No. 115CV00234DADSKO, 2016 WL 4921542, at *9–*10 (E.D. Cal. July 8, 2016), *report and recommendation adopted*, No. 115CV00234DADSKO, 2016 WL 4899676 (E.D. Cal. Sept. 14, 2016) (stating that the few cases in which federal courts have exercised jurisdiction over § 946.6 petitions relied on language that predated amendments to the California Government Code or that the parties did not dispute jurisdiction over the petition).

The Court agrees with the majority of California district courts and finds that it may not exercise subject matter jurisdiction over the Petition.

### 2. Claim Accrual

The Court may, however, properly exercise jurisdiction over disputes regarding the date that Plaintiffs' claims against Defendant City of San Diego accrued for purposes of the statute of limitations and, as a result, whether Plaintiffs complied with the California Government Claims Act in the first instance.

25-cv-1447-WQH-MSB

District courts have distinguished between the exercise of subject matter jurisdiction over a petition for relief filed under California Government Code § 946.6 and separate questions of claim accrual and compliance with a statute of limitations. *Ovando*, 92 F. Supp. 2d at 1022 ("There is an important distinction between petitions for leave to file a late claim pursuant to Cal. Gov't Code § 946.6 and disputes as to whether a claim is in fact timely. . . . A dispute over when a claim accrued is a question of whether the claimant has complied with the [California Government Claims Act] and is within a federal court's jurisdiction."). The Court may consider the parties' contentions related to the date that Plaintiffs' claims against government entities accrued for purposes of the statute of limitations. *See Est. of Upton v. Cnty. of Riverside*, No. EDCV 23-2655 JGB (SHKX), 2024 WL 4403899, at *5 (C.D. Cal. Aug. 26, 2024) (considering "the parties' arguments concerning the accrual of [the plaintiffs'] government claims and the timeliness of their submission.").

San Diego Defendants contend that Plaintiffs' claims against the government accrued at the time that they "recovered [Ms. Cameroni de Adams's] vehicle and body from the tow yard." (ECF No. 2-1 at 28.) The Complaint alleges that Ms. Cameroni de Adams was discovered on December 6, 2023. (Compl. ¶ 4.)

Plaintiffs contend that their claims accrued only after receiving the Medical Examiner's Report on October 16, 2024. *Id.* ¶¶ 8–10.

Under the California Government Claims Act, a cause of action accrues on the date "upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon." Cal. Gov't Code § 901.

Under California law, a negligence cause of action generally accrues at the time of injury but may accrue only at the time that a plaintiff "became aware of defendant's negligence as a cause, or could have reasonably become so aware through the exercise of reasonable diligence." *Ovando*, 92 F. Supp. 2d at 1023 (quoting *Leaf v. City of San Mateo*,

104 Cal. App. 3d 398, 408 (Cal. Ct. App. 1980)). This "discovery rule" provides that a claim does not accrue until a "plaintiff discovers, or reasonably could have discovered, [their] claim." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002). "A plaintiff is 'held to [their] actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to [them].'" *Id.* (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (Cal. 1988)).

In *Estate of Upton*, the federal district court considered the accrual date for tort claims arising from the death of an incarcerated person at a correctional facility. *Estate of Upton*, 2024 WL 4403899 at *5–*6. The decedent, a twenty-one-year-old woman, died by suicide while in police custody on April 28, 2022. *Id.* at *3. The police informed the plaintiff that their daughter had died on the same day, but the plaintiff had "no reason to believe that her daughter had died by suicide or that [the defendants] had engaged in any tortious behavior resulting in her daughter's death" at that time. *Id.* at *6. It was not until four months later that the plaintiff learned that her daughter had died by suicide while under the care of the defendant officers. *Id.* at *7. The district court held that the plaintiff's claim accrued upon the discovery of that information because only then had the plaintiff obtained a reasonable basis upon which to suspect that the defendants had played a role in her daughter's death. *Id.* at *7.

Here, Plaintiffs allegedly learned that Ms. Cameroni de Adams "was found [deceased] inside her vehicle" on December 6, 2023. (Compl. ¶ 21.) However, as in *Estate of Upton*, the knowledge of her death did not provide "sufficient reason to suspect" that San Diego Defendants had committed any tortious act in relation to her death. 2024 WL 4403899 at *6. Plaintiffs may reasonably have believed at the time that the vehicle collision inflicted mortal wounds and that Ms. Cameroni de Adams died immediately at the scene of the collision. Plaintiffs allege that it was only upon receipt of the Medical Examiner's Report, on October 16, 2024, that they learned that Ms. Cameroni de Adams had "survived the collision." (Compl. ¶ 26.) This additional knowledge allegedly provided a new and reasonable basis to suspect that San Diego Defendants' conduct after the vehicle collision

25-cv-1447-WQH-MSB

constituted tortious acts that contributed to Ms. Cameroni de Adams's death. The Court concludes that Plaintiffs' negligence claim against Defendant City of San Diego therefore accrued on October 16, 2024, at the time of this discovery.

Plaintiffs subsequently filed their claims against Defendant City of San Diego less than one month later on November 5, 2024. (Compl. ¶ 28.) Plaintiffs therefore complied with the California Government Claims Act's requirement that a "claim relating to a cause of action for death" be presented to the government "not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2. Plaintiffs subsequently "received a letter from the City rejecting" their claim. (Compl. ¶¶ 30–31.) Pursuant to the California Government Claims Act, a claim against a government entity may proceed after being timely filed and rejected. Cal. Gov't Code § 945.4.

Plaintiffs' claims against Defendant City of San Diego complied with the requirements of the California Government Claims Act. The Court denies the Motion to Dismiss to the extent that it seeks dismissal of tort claims against Defendant City of San Diego for Plaintiff's failure to comply with the California Government Claims Act.

### E.    Count IV: Negligence

Plaintiffs assert their fourth cause of action for negligence against Defendants City of San Diego, San Diego Police Department, Chief David Nisleit, Officer Matthew Brace, and Officer Mallory Maraschiello.[4] (Compl. ¶¶ 9, 86.) Plaintiffs contend that each Defendant owed Ms. Cameroni de Adams a duty to "ensure her health and safety while securing a scene following a collision and ensuring persons were transported to receive medical care." *Id.* ¶ 86.

#### 1.  *Direct Liability of Defendant Officers*

San Diego Defendants contend that Plaintiffs fail to state a claim for negligence because the Defendant Officers did not owe a duty to Ms. Cameroni de Adams. (ECF No.

---

[4] Plaintiffs also assert this cause of action against Towing Defendants. (Compl. ¶ 93.) San Diego Defendants do not move to dismiss the claim as to Towing Defendants.

25-cv-1447-WQH-MSB

2-1 at 13–16, 20.) San Diego Defendants contend that, while a "duty can arise in rare and narrow circumstances where there is a legally recognized special relationship," there are "no allegations of the necessary facts" here to establish a special relationship between the Defendant Officers and Ms. Cameroni de Adams. *Id.* at 14–15.

Plaintiffs respond that "the duty at issue does not" require identifying a "special relationship" between San Diego Defendants and Ms. Cameroni de Adams. (ECF No. 3 at 14 (quoting ECF No. 2-1 at 13, 14–16, 20).) Instead, Plaintiffs contend that this cause of action is "predicated upon a negligent undertaking theory of liability" based "upon the duty of Defendants' employees and independent contractors to not negligently and affirmatively place Decedent Cameroni de Adams . . . in a more dangerous situation than the situation immediately after the collision." *Id.* San Diego Defendants reply that the negligent undertaking doctrine "does not and cannot apply to the facts of this case."

To state a claim for negligence under California law, a plaintiff must "demonstrate a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Vasilenko v. Grace Fam. Church*, 3 Cal. 5th 1077, 1083 (Cal. 2017) (quotation omitted). "The question of whether a duty exists is a question of law and must be decided by the court on a case-by-case basis." *Dutton v. City of Pacifica*, 35 Cal. App. 4th 1171, 1174 (Cal. Ct. App. 1995).

The California Supreme Court explained the application of "general principles of tort law" to the "area of law enforcement and other police activities" in *Williams v. State of California*:

> As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act. Also pertinent to our discussion is the role of the volunteer who, having no initial duty to do so, undertakes to come to the aid of another—the "good Samaritan." He is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. . . .

25-cv-1447-WQH-MSB

[T]he rules concerning the duty—or lack thereof—to come to the aid of another are applicable to law enforcement personnel in carrying out routine traffic investigations. . . . [W]hen the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization.

34 Cal. 3d 18, 23–24 (Cal. 1983) (cleaned up); *see also Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th 703, 717 (Cal. 2001) ("[A]lthough law  enforcement officers, like other members of the public, generally do not have a legal duty to come to the aid of a person, in carrying out routine traffic enforcement duties or investigations, a duty of care does arise when an officer engages in an affirmative act which places the person in peril or increases the risk of harm.") (quotation omitted); *Benavidez v. San Jose Police Dep't*, 71 Cal. App. 4th 853, 859 (1999), *as modified on denial of reh'g* (May 25, 1999) ("The police owe duties of care only to the public at large and, except where they enter into a special relationship, have no duty to offer affirmative assistance to anyone in particular.") (quotation omitted).

California courts have recognized that a duty of care may arise when police officers encounter an incident, render assistance, and become aware of a foreseeable danger. *Mann v. State of California*, 70 Cal. App. 3d 773, 780 (Cal. Ct. App. 1997); *Dutton*, 35 Cal. App 4th at 1175–76 (holding that a defendant officer did not owe the plaintiff a duty of care when ordering her to disperse from a park because it was not clearly "more likely that [the plaintiff] would be injured as a result of [the officer's] order to disperse than she would be injured if [the officer] exercised [] other options").

In *Mann v. State of California*, a traffic officer stopped on the highway to assist "two cars stranded in the speed-change lane." 70 Cal. App. 3d at 776. The officer parked his vehicle behind the cars and turned on a "flashing amber light" visible to other motorists. After a tow truck operator arrived at the scene, the officer departed without warning and "left the stranded cars unprotected by the rearward flashing amber light of his patrol car." *Id.* at 777. Minutes later, another vehicle "sideswiped one of the two cars and struck the people around them." *Id.* The appellate state court reversed the trial court's entry of a

directed verdict in favor of the defendant officer on the question of negligence. *Id.* at 781. The appellate court reasoned that the defendant officer had "chosen to investigate the plight of specific persons" and "informed himself of the foreseeable danger to them from passing traffic," which may have given rise to "a duty to exercise ordinary care to protect them from such risk." *Id.* at 780. The California Supreme Court has formulated the question of negligence as whether "an officer voluntarily assumes a duty to provide a particular level of protection, and then fails to do so, or if an officer undertakes affirmative acts that increase the risk of harm to the plaintiff." *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112, 1129 (Cal. 2002); *see id.* at 1118–19, 1130 (holding that defendant officers had not assumed a duty to protect a repeated victim of domestic violence from a fatal attack by her former husband at a family court hearing).

Here, Plaintiffs adequately allege that the Defendant Officers owed a duty of care to Ms. Cameroni de Adams. Plaintiffs allege that the Defendant Officers "responded to the scene" of a multiple-vehicle crash that occurred at approximately 1:08 a.m. in the morning. (Compl. ¶¶ 35–36.) Plaintiffs' allegation that the Defendant Officers arranged to have Ms. Cameroni de Adams's vehicle transported to a tow yard supports an inference that the Defendant Officers were exercising control over the crash site and attempting to render assistance to persons and/or property in the area. In doing so, it is plausible that the Defendant Officers were aware of the risk that the drivers and passengers involved in the incident could have been injured. Like the traffic officer in *Mann*, the Defendant Officers chose to "investigate the plight of specific persons" and became appraised to as a "foreseeable danger" that persons at or near the crash site may have been injured and would require medical assistance. At this stage of the proceedings, the Court concludes that Plaintiffs adequately allege that the Defendant Officers owed a duty of care to persons involved in the automobile accident, including Ms. Cameroni de Adams.

San Diego Defendants do not raise any contentions regarding the other elements of this negligence claim against the Defendant Officers, nor do they raise any contentions regarding the liability of Defendant Chief David Nisleit as compared to the Defendant

Officers.[5] (ECF No. 2-1 at 21.) Accordingly, the Motion to Dismiss the negligence claim against the Defendant Officers and Defendant Chief David Nisleit is denied.[6]

### 2. *Vicarious Liability*

San Diego Defendants contend that California Government Code § 815 precludes negligence liability for Defendant City of San Diego. (ECF No. 2-1 at 19–20.) Plaintiffs respond that a public entity may be liable for the act or omission of an employee within the scope of their employment and, separately, that a public entity may be liable for the tortious acts of an independent contractor. (ECF No. 3 at 12 (citing Cal. Gov't Code §§ 815.2, 815.4).)

California Government Code § 815 states: "[E]xcept as otherwise provided by statute[,] [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815. California Government Code § 815.2, however, provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." *Id.* § 815.2; *see also Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1180 (Cal. 2003) ("Government Code section 815.2 [] makes a public entity *vicariously* liable for its employee's negligent acts or omissions within the scope of employment . . . [with] the importation qualification that a public entity is not liable for injuries committed by an employee who is immune from liability for such injuries.").

"When assessing a claim for vicarious liability against a governmental employer based on the acts or omissions of its employee, a court must examine whether the employee

---

[5] Plaintiffs allege that Defendant Chief David Nisleit "directly participated in the tortious conduct" but do not make specific allegations about his involvement in the transportation of Ms. Cameroni de Adams's vehicle. (Compl. ¶ 8.)

[6] San Diego Defendants also raise no contentions with respect to the alleged tortious conduct of Towing Defendants, and the Court issues no holding regarding their liability.

25-cv-1447-WQH-MSB

who acted or failed to act would have been personally liable for the injury." *de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 249 (Cal. Ct. App. 2007); *see also Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California . . .  imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where the public employee would also be immune.").

Here, the Court construes the Complaint as asserting a theory of vicarious liability against Defendant City of San Diego and Defendant San Diego Police Department for the alleged negligent conduct of the Defendant Officers. *See* ECF No. 3 at 12 (citing Cal. Gov't Code § 815.2(a)). Plaintiffs allege that Defendants City of San Diego and San Diego Police Department employed the Defendant Officers at the time of the automobile crash, and that the Defendant Officers were acting within the scope of their employment at all relevant times. (Compl. ¶¶ 6–7, 10–11, 85). San Diego Defendants do not raise any contentions to the contrary. To the extent that Plaintiffs assert their negligence claim on a theory of vicarious liability, California law permits the public entity to be held liable for the conduct of its employees.

Accordingly, Plaintiffs have adequately pled their negligence claim against Defendants City of San Diego and San Diego Police Department at this stage of the proceedings. The Motion to Dismiss is denied with respect to Plaintiffs' fourth cause of action for negligence.

### F. Count VI: Negligent Hiring, Supervision, and Retention

Plaintiffs assert their sixth cause of action for negligent hiring, supervision, and retention. (Compl. ¶ 105.) As a preliminary matter, San Diego Defendants contend that "[i]t is unclear who Plaintiffs bring this cause of action against." (ECF No. 4 at 9.) The Complaint indicates Plaintiffs assert this claim against all Defendants. (Compl. at 31.) Plaintiffs suggest, in their Opposition, that the claim is asserted against only Defendants City of San Diego, San Diego Police Department, and Chief David Nisleit, and that their liability arises from those Defendants' hiring and retention of the Defendant Officers and

25-cv-1447-WQH-MSB

Towing Defendants. (ECF No. 3 at 16–17.) The Court construes the claim in this manner for the purposes of the pending Motion to Dismiss.

San Diego Defendants contend that the Complaint does not make clear "if this claim is rooted in common law negligence or arises under 42 U.S.C. § 1983 as a *Monell* claim" and move for dismissal because the claim is "legally vague." (ECF No. 2-1 at 20.) Plaintiffs respond that their claim is "rooted in common law negligence," and that their Complaint makes this clear. (ECF No. 3 at 16.) San Diego Defendants contend that Defendant City of San Diego is immune from liability under California law and, separately, that Plaintiffs fail to state a claim upon which relief can be granted.

### 1. Public Entity Immunity

San Diego Defendants contend that, "if the claim is grounded in common law negligence, it fails for the same reasons the negligence claim fails: the City [of San Diego] cannot be liable for negligence and can only be sued based on statute." (ECF No. 3 at 22.)

"With respect to hiring and supervision practices[,] there is no statutory basis under California law for declaring an entity directly liable for negligence." *Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 936 (E.D. Cal. 2015) (dismissing the plaintiffs' negligence claim "based on defendant [county's] hiring, training, supervision, or retention of individual police officers"); *Sanders v. City of Fresno*, No. CIVA 05-0469 AWISMS, 2006 WL 1883394, at *22 (E.D. Cal. July 7, 2006) ("[C]laims of negligent hiring, retention, training, supervision, and discipline made against the entity or the Police Chief are claims for the direct acts of the entity. As such, Plaintiff was required to identify a statute that imposes this duty on the entity."); *Reinhardt v. Santa Clara Cnty.*, No. C05-05143, 2006 WL 3147691, at *10 (N.D. Cal. Nov. 1, 2006) ("All allegations of direct liability on the part of the entity defendants, such the failure-to-train allegations, fail as a matter of law, because plaintiff has cited no statute imposing such liability.").

Here, unlike the preceding cause of action asserting a vicarious liability theory of negligence, Plaintiffs seek to hold Defendants directly liable for their hiring, retention, and supervision practices. As discussed above, California Government Code § 815 provides

that, "[e]xcept as otherwise provided by statute[,] [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815(a). The carve-out for vicarious liability reflected in § 815.2 is inapplicable to this cause of action seeking to hold Defendants City of San Diego, San Diego Police Department, and Chief David Nisleit directly liable for their hiring and supervisory practices under a common law negligence theory. This Court agrees with other district courts in holding that a direct liability theory of common law negligence for hiring, supervision, and retention may not be maintained against public entities under California law.

### 2. Failure to State a Claim

San Diego Defendants also contend, separately, that "Plaintiffs fail to allege that the City [of San Diego], SDPD or Chief Nisleit knew or should have known that hiring either of these Defendant Officers created a particular risk of harm that in fact occurred in this case." (ECF No. 4 at 9.)

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." *Roman Cath. Bishop v. Superior Ct.*, 42 Cal. App. 4th 1556, 1564 (Cal. Ct. App. 1996). "Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1139 (Cal. Ct. App. 1998). "Negligence liability will be imposed on an employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'" *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139 (Cal. Ct. App. 2009) (quoting *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (Cal. Ct. App. 1996)).

Here, Plaintiffs fail to adequately allege that Defendants City of San Diego, San Diego Police Department, and Chief David Nisleit knew or had reason to know that hiring the Defendant Officers and Towing Defendants would create a "particular risk" of harm.

25-cv-1447-WQH-MSB

*Id.* Plaintiffs make only conclusory allegations that San Diego Defendants "knew and/or should have known that" the Defendant Officers and Towing Defendants were "unfit and/or incompetent to ensure the health and safety of all persons involved in collisions whereby vehicles were towed and impounded to a tow yard" and that San Diego Defendants "knew and/or should have known" that they were unfit. (Compl. ¶ 107.) Plaintiffs do not allege any prior conduct or information provided to San Diego Defendants suggesting that the Defendant Officers or Towing Defendants were unfit to carry out their employment responsibilities. *See Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815–817 (affirming summary judgment in favor of defendant employer that "had no knowledge of the content of any of [its employees'] threatening emails" sent to plaintiff) (Cal. Ct. App. 2006); *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1101 (S.D. Cal. 2020) (granting summary judgment in favor of defendant employer because the plaintiff did not raise an issue of material fact regarding whether the defendant employer "had prior knowledge as to [employee's] propensity to discriminate against persons with disabilities").

Accordingly, the Motion to Dismiss is granted with respect to Plaintiffs' sixth cause of action for negligent hiring, supervision, and retention.

### G. Punitive Damages

San Diego Defendants contend that there can be no punitive damages against government entities and that the facts alleged do not support an award of punitive damages under 42 U.S.C § 1983. (ECF No. 2-1 at 24–26.) Plaintiffs, in response, "waive their claim for punitive damages as it relates to City Defendants." (ECF No. 3 at 21.)

### H. Leave to Amend

Plaintiffs request that the Court deny the pending Motion to Dismiss and, alternatively, "grant [] leave to amend to cure any alleged deficiencies." (ECF No. 3 at 23.) Federal Rule of Civil Procedure 15(a) provides that a district court should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244

F.3d 708, 712 (9th Cir. 2001) (quotation omitted). A district court should grant leave to amend unless it is clear that "the complaint could not be saved by any amendment." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998)). Here, to the extent that the Court grants the San Diego Defendants' Motion to Dismiss, its dismissal of Plaintiffs' claims is without prejudice and with leave to amend.

## V.   CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiffs' Complaint (ECF No. 2) is granted in part and denied in part as follows. The motion is granted with respect to Plaintiffs' claims against San Diego Defendants under 42 U.S.C. § 1983 (Count II, Count III) and Plaintiff's claim for negligent hiring, retention, and supervision (Count VI) without prejudice and with leave to amend. The motion is denied with respect to Plaintiffs' negligence claim (Count IV).

IT IS FURTHER ORDERED that Plaintiffs may file an Amended Complaint that addresses the deficiencies identified herein no later than twenty-one (21) days from the filing of this Order. If no Amended Complaint is filed, San Diego Defendants shall file an Answer to the Complaint no later than thirty (30) days from the filing of this Order.

Dated:  March 26, 2026

Hon. William Q. Hayes
United States District Court

25-cv-1447-WQH-MSB